UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NALANI ANDERSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MONTEREY FINANCIAL SERVICES, LLC, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-02040-DMR<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY CASE**<br><br>Re: Dkt. No. 29 |

Defendant Monterey Financial Services, LLC ("Monterey") moves to compel arbitration and to dismiss or stay the case pending arbitration. [Docket No. 29.] This matter is suitable for determination without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted.

## I.　BACKGROUND

Plaintiff Nalani Anderson alleges that Monterey violated the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code section 1788 et seq., and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq., in connection with its efforts to collect a consumer debt from Anderson. Specifically, Anderson alleges that Monterey is a "debt collector" within the meaning of the RFDCPA, and that it repeatedly called her on her telephone without her consent. She further alleges that Monterey used an automatic telephone dialing system to place repeated collection calls. Compl. ¶¶ 3, 6-8. She alleges two claims for relief under the RFDCPA and the TCPA.

Monterey moves to compel arbitration and to dismiss or stay the case pending arbitration. It argues that Anderson agreed to arbitrate the claims that she asserts in this lawsuit when she signed a contract governing the alleged debt at issue. According to Monterey, Anderson entered

into a Retail Installment Sale Contract with a non-party, Gulati Motors Inc. ("GMI") on August 7, 2015 to finance $4,240.64 in car repairs ("the contract"). [Docket No. 30 (Lucas Decl., July 26, 2018) ¶ 2, Ex. A (Contract).] GMI later sold the contract to non-party LoanHero, Inc., which subsequently assigned the contract to Monterey for servicing. Lucas Decl. ¶¶ 2, 3.

The contract specifies that Anderson is the "buyer" and GMI is the "Creditor-Seller." Contract at 1. The first page of the contract contains a provision in large, bold type stating, "**This Contract contains an Arbitration Agreement that provides that you and we agree to submit to binding arbitration of any dispute between you and us under this Contract or any dealings in connection with this Contract and not through litigation in any court. See Section 17 below.**" *Id*. Section 17 sets forth the arbitration agreement in bold type, which provides in relevant part:

> **The parties (including Buyer, Seller and any Assignee of this Contract) agree that any dispute arising under this Contract and the documents and transactions related to this Contract are to be resolved through binding arbitration. This includes any dispute regarding whether this Arbitration Agreement itself is enforceable or valid or the meaning of this Arbitration Agreement. . . . This Arbitration Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and any state law governing this transaction. The party filing a dispute in arbitration must select either the National Arbitration Forum ("NAF") or JAMS as arbitrator, who will apply its procedures to the arbitration unless such procedures conflict with this Arbitration Agreement and then this Arbitration Agreement will control. . . . Costs of the arbitration will be divided by the parties unless the arbitrator determines otherwise, provided that the first $100 of any filing fee will be reimbursed by the Seller to the Buyer upon request. . . . If any portion of this Arbitration Agreement is deemed unenforceable, the balance of this Arbitration Agreement shall remain in full force and effect. . . . If Seller assigns this Contract, this Arbitration Agreement will apply to any dispute between Buyer and the Assignee.**

Contract § 17. For the sake of clarity, the court refers to this paragraph generally as the "arbitration agreement." Anderson signed the contract on August 7, 2015. *See* Contract at 4, 5.

Monterey argues that the complaint alleges violations of the RFDCPA and TCPA in connection with Monterey's servicing of the contract, and that these claims clearly fall within the scope of the parties' arbitration agreement. Therefore, it moves to compel arbitration and to dismiss or stay the action in light of the contract the parties signed.

2

Anderson does not dispute that she signed the contract and does not dispute that the conduct at issue in this lawsuit falls within the scope of the arbitration clause. *See* Opp'n at 1. Instead, she opposes the motion on the ground that the arbitration agreement is invalid because it is both procedurally and substantively unconscionable. *Id*.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Enacted for the purpose of enforcing written arbitration agreements according to their own terms, the FAA embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Id.* at 682 (quoting *Volt*, 489 U.S. at 479). Section 4 of the FAA ensures that "'private agreements to arbitrate are enforced according to their terms,'" *Stolt–Nielsen*, 559 U.S. at 682 (quoting *Volt*, 489 U.S. at 479), by expressly authorizing a party to an arbitration agreement to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration is a matter of contract, and the FAA places arbitration agreements "upon the same footing as other contracts." *Volt*, 489 U.S. at 478 (citations omitted). Therefore, courts are required to enforce arbitration agreements according to their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010). "Like other contracts, however, they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* (quotation omitted). Courts apply ordinary state law principles governing the formation of contracts to evaluate such claims. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007).

"By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court,

but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985)) (emphasis in original). Therefore, the court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp*., 207 F.3d at 1130 (citations omitted).

## III. DISCUSSION

As noted above, Anderson signed a contract containing an arbitration agreement governing "any dispute arising under this Contract and the documents and transactions related to this Contract." Contract § 17. Monterey moves to compel arbitration, arguing that Anderson's claims are subject to the parties' arbitration agreement. Anderson argues that the arbitration agreement is unconscionable and therefore unenforceable. As the party opposing enforcement of the agreement, Anderson bears the burden of proving this defense. *Mance v. Mercedes-Benz, USA*, 901 F. Supp. 2d 1147, 1157 (N.D. Cal. 2012) (citation omitted).

State law governs the court's assessment of the validity of the arbitration agreement. California law governs here, as the contract specifies that it "shall be governed, construed and interpreted by, through and under the laws of the state of California." Contract § 18. "Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria*, 733 F.3d at 922 (citations omitted). Substantive unconscionability focuses on overly one-sided results. "A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it 'shocks the conscience.'" *Id*. at 923 (quoting *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1573 (2009)). It is not necessary that both types of unconscionability be present in the same degree. *Armendariz*, 24 Cal. 4th at 114. Instead, courts apply a sliding scale to determine unconscionability: "greater substantive

4

unconscionability may compensate for lesser procedural unconscionability." *Chavarria*, 733 F.3d at 922 (citing *Armendariz*, 24 Cal. 4th at 114).

### A. Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. It focuses on factors of oppression and surprise." *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001) (quotation omitted). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). "Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Id*. "The California Supreme Court has consistently reiterated that '[t]he procedural element of an unconscionable contract generally takes the form of a contract of adhesion.'" *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 582 (2007). The court defines the term "contract of adhesion" as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113; *see also Chavarria*, 733 F.3d at 923 (discussing cases in which the Ninth Circuit has held agreements to be procedurally unconscionable).

Here, Anderson argues that the contract between her and GMI is procedurally unconscionable because it is a contract of adhesion. According to Anderson, the contract is a form contract drafted by GMI which she was required to sign in order to obtain the financing she sought.[1] She argues that the parties had unequal bargaining power and that the contract is "oppressive" because she was not given an opportunity to negotiate the contract or "engage in a meaningful dialogue or negotiation over the terms of the agreement." Opp'n 4-5.[2] However, Anderson did not submit any evidence in support of this (or any other) assertion in her opposition,

---

[1] In her opposition, Anderson asserts that the had to sign the contract "in order to purchase a vehicle." Opp'n 4. The court notes that the contract actually states that the "goods or service being purchased" is the "[c]ost for car repairs." Contract 2.

[2] Anderson does not contend that she was surprised by the arbitration agreement. Opp'n 4-5.

5

and cites no evidence to support her claim that she was not "given an opportunity to conduct a meaningful conversation about the contents" of the contract or negotiate any of its terms. *See* Opp'n at 5. While there may be some merit in Anderson's contention that the contract was adhesive, it is Anderson's burden to establish unconscionability, and the court cannot make such a finding on the basis of attorney argument alone. Therefore, because procedural unconscionability must be present before a court declares an arbitration agreement invalid, Anderson's unconscionability argument fails on this basis alone. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016) ("Because the agreements were not procedurally unconscionable, and because both procedural and substantive unconscionability must be present in order for an agreement to be unenforceable, we need not reach the question whether the agreements here were substantively unconscionable." (internal citation omitted)).

### B. Substantive Unconscionability

Anderson must also demonstrate that the contract is substantively unconscionable under California law. Substantive unconscionability focuses on whether the substantive terms of the contract are "overly harsh" or "one-sided." *Armendariz*, 24 Cal. 4th at 114. The California Supreme Court has emphasized that "the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party," including "unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016) (quotations and citations omitted).

Anderson challenges only one provision of the arbitration agreement as substantively unconscionable: the provision that requires the parties to share the costs of arbitration. Specifically, the arbitration agreement states that "[c]osts of the arbitration will be divided by the parties unless the arbitrator determines otherwise, provided that the first $100 of any filing fee will be reimbursed by the Seller to the Buyer upon request." Contract § 17. Anderson asserts that this provision is similar to a cost allocation provision in the arbitration agreement at issue in *Chavarria*, which the Ninth Circuit held was unconscionable. In *Chavarria*, a former Ralphs Grocery Company ("Ralphs") employee filed a putative class action alleging violations of

California's wage and hour laws. Ralphs moved to compel arbitration of the plaintiff's individual claims pursuant to an arbitration policy that was incorporated into its employment application. 733 F.3d at 919. The district court denied the motion, finding the policy unconscionable under California law. The Ninth Circuit affirmed, holding that the policy was procedurally unconscionable because it "was presented on a 'take it or leave it' basis with no opportunity" for the plaintiff to negotiate its terms. The plaintiff "could only agree to be bound by the policy or seek work elsewhere." *Id*. at 922-23. Further, Ralphs did not provide the plaintiff with the terms of the policy until three weeks after she agreed to be bound by it. *Id*. at 923.

*Chavarria* also affirmed the district court's conclusion that the policy was substantively unconscionable based on three particular terms. These terms included 1) an arbitrator selection provision which "would always produce an arbitrator proposed by Ralphs in employee-initiated arbitration proceedings"; 2) "the preclusion of institutional arbitration administrators, namely AAA or JAMS, which have established rules and procedures to select a neutral administrator"; and 3) a requirement that "the arbitrator must, at the outset of the arbitration proceedings, apportion the arbitrator's fees between Ralphs and the employee regardless of the merits of the claim." *Id*. The court held that the three terms at issue "lie far beyond the line required to render an agreement invalid," and concluded that "Ralphs ha[d] tilted the scale so far in its favor, both in the circumstances of entering the agreement and its substantive terms, that it 'shocks the conscience.'" *Id*. at 926 (citing *Parada*, 176 Cal. App. 4th at 1578); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002) (cost provision requiring employee to split arbitrator's fees "would render an arbitration agreement unenforceable.").

The cost sharing provision at issue here is distinguishable from the one in *Chavarria* because it does not require that the parties share the costs of arbitration. Instead, it states that "[c]osts of the arbitration will be divided by the parties *unless the arbitrator determines otherwise*, provided that the first $100 of any filing fee will be reimbursed by the Seller to the Buyer upon request." Contract § 17 (emphasis added). This provision gives discretion to the arbitrator to direct that the parties share costs, unlike the provision at issue in *Chavarria*, which "require[d] that the arbitrator impose significant costs on the employee up front, regardless of the merits of the

7

employee's claims, and severely limit[ed] the authority of the arbitrator to allocate arbitration costs in the award." 733 F.3d at 926. Moreover, the arbitration agreement provides that the party filing the dispute must select either NAF or JAMS as the arbitrator, and both NAF and JAMS's rules and procedures limit the costs of arbitration to consumers. *See* JAMS Consumer Case Information spreadsheet, available at www.jamsadr.com/consumercases ("JAMS policy is that a consumer pays an initial case management fee of $250 (for consumer matters) . . . and typically the nonconsumer party pays the remaining fees.") (last visited 10/4/2018); NAF Code of Procedure Rule 5K, available at http://www.adrforum.com/Rules ("Consumers pay only reasonable arbitration fees as explained in these Rules and the Fee Schedule, and as required by the applicable law. Other Parties may have to pay fees for Consumers.") (last visited 10/4/2018).

As the parties' arbitration agreement does not contain a mandatory cost sharing provision, the court concludes that the agreement is not so unfairly one-sided as to be deemed unconscionable.

## IV. CONCLUSION

For the foregoing reasons, Monterey's motion to compel arbitration is granted. The court finds it appropriate to stay the action pending arbitration and directs the Clerk to administratively close the case. *See Dist. Council 16 Int'l Union of Painters & Allied Trades v. LML Enterprises, Inc.*, No. C 13-565 SI, 2013 WL 3802903, at *1 (N.D. Cal. July 18, 2013) (holding that "courts have discretion under 9 U.S.C. § 3 to dismiss or stay claims that are subject to an arbitration agreement" (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988))). The parties shall file a status report within 7 days of the conclusion of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: October 12, 2018



Donna M. Ryu
United States Magistrate Judge

8